**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER CLOSE,
            *Petitioner-Appellant,*

v.

JEFF E. THOMAS, Warden,
            *Respondent-Appellee.*

No. 10-35850

D.C. No.
3:09-cv-01172-HA

DANNY R. SASS,
            *Petitioner-Appellant,*

v.

JEFF THOMAS, Warden,
            *Respondent-Appellee.*

No. 10-35851

D.C. No.
3:09-cv-01224-HA

MICHAEL LEE STOCKTON,
            *Petitioner-Appellant,*

v.

JEFF E. THOMAS,
            *Respondent-Appellee.*

No. 10-35853

D.C. No.
3:09-cv-01290-HA

BRADLEY ALAN MOSCHETTI,
            *Petitioner-Appellant,*

v.

JEFF E. THOMAS, Warden Federal
Prison Camp, Sheridan, Oregon,
            *Respondent-Appellee.*

No. 10-35852

D.C. No. 3:09-cv-
01349-HA

10079

RAFI SHOTLAND,
    *Petitioner-Appellant,*

    v.

JEFF E. THOMAS,
    *Respondent-Appellee.*

No. 10-35854
D.C. No.
3:09-cv-01368-HA

EDELMIRO TAMEZ, Jr.,
    *Petitioner-Appellant,*

    v.

JEFF E. THOMAS, Warden Federal
Prison Camp, Sheridan, Oregon,
    *Respondent-Appellee.*

No. 10-35855
D.C. No.
3:09-cv-01347-HA

LARRY D. BEVERLY,
    *Petitioner-Appellant,*

    v.

JEFF E. THOMAS,
    *Respondent-Appellee.*

No. 10-35856
D.C. No.
3:09-cv-01385-HA

KEVIN JEROME SNOOZY,
    *Petitioner-Appellant,*

    v.

JEFF E. THOMAS, Warden, Federal
Prison Camp, Sheridan, Oregon,
    *Respondent-Appellee.*

No. 10-35857
D.C. No.
3:09-cv-01365-HA

EDWARD ANDERTON,
          *Petitioner-Appellant,*

          v.

JEFF E. THOMAS,
          *Respondent-Appellee.*

No. 10-35858

D.C. No.
3:10-cv-00007-HA

ROBERT SCOTT MERRY,
          *Petitioner-Appellant,*

          v.

JEFF E. THOMAS, Warden, Federal
Prison Camp, Sheridan, Oregon,
          *Respondent-Appellee.*

No. 10-35859

D.C. No.
3:09-cv-01367-HA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Submitted June 6, 2011*
Portland, Oregon

Filed August 3, 2011

Before: Raymond C. Fisher, Ronald M. Gould, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, District of Oregon, Portland, Oregon, for petitioner-appellants Christopher Close, et al.

Dwight C. Holton, United States Attorney District of Oregon, Kelly A. Zusman, Appellate Chief United States Attorney District of Oregon, Kevin Danielson, Assistant United States Attorney District of Oregon, Portland, Oregon, for respondent-appellee Jeff E. Thomas, Warden, FCI Sheridan.

**OPINION**

PAEZ, Circuit Judge:

Petitioner Christopher Close and nine other similarly situated prisoners (collectively "Close" or "Petitioners") appeal the district court's judgment denying their 28 U.S.C. § 2241 habeas corpus petitions. These consolidated habeas petitions require us to consider the manner in which the Bureau of Pris-

ons prioritizes a prisoner's eligibility for entering into a Residential Drug Abuse Treatment Program. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Finding no error in the Bureau of Prisons' interpretation of the governing statute, 18 U.S.C. § 3621(e)(1), we affirm the district court's judgment.

## I. Factual and Procedural Background

In 1990, Congress required that the Bureau of Prisons ("BOP") provide substance abuse treatment for inmates with a treatable condition of substance addiction or abuse. 18 U.S.C. § 3621(b). As a result, BOP instituted Residential Drug Abuse Treatment Programs ("RDAP"). Four years later, Congress amended § 3621, providing that BOP could reward inmates who successfully completed RDAP with early release. 18 U.S.C. § 3621(e)(2)(B). The statute permits BOP to consider only nonviolent offenders for this early release incentive, and it permits early release of up to only one year. *Id.* Even though violent offenders cannot benefit from the early release provision, those with substance abuse problems are still eligible for participation in RDAP. Congress directed that BOP place RDAP-eligible inmates into programs "with priority for such treatment accorded based on an eligible prisoner's proximity to release date." 18 U.S.C. § 3621(e)(1)(A).

Neither the statute nor its regulations, 28 C.F.R. §§ 550.50 — .57, indicate whether BOP should factor in the early release incentive when it determines how close inmates are to their release date. The issue is significant because demand for RDAP far exceeds its availability and "proximity to release date" dictates inmates' priority on the long RDAP wait list. So if a nonviolent inmate is 24 months from the end of his term of imprisonment, should BOP rank him on the RDAP wait list as though he were only 12 months from the end of his term of imprisonment because he would be eligible for § 3621(e)'s early release upon successful RDAP completion? BOP has answered this question both ways at different times.

For some time, BOP did factor in potential early release for eligible inmates when ranking them on the RDAP wait list. As a result, a nonviolent offender scheduled to be released in 24 months would be ranked on the wait list at the same level as a violent offender with only 12 months remaining in his term of imprisonment. Currently, however, as reflected in an internal policy statement, BOP does not take the potential early release into account when calculating a nonviolent inmate's proximity to release.[1]

In March 2009, an Oregon district court found that "proper statutory construction compels the conclusion that the BOP is required to perform wait list calculations that include the prisoner's projected § 3621(e) release date." *Thurman v. Thomas*, No. 06-1400, 2009 WL 936663, at * 4 (D. Or. March 30, 2009). The district court observed that "[f]ailing to do so currently results in a significant diminution or the outright elimination of the statutorily created incentive of sentence reductions for prisoners who seek and complete RDAP." *Id.* The district court concluded that "inmates eligible for the discretionary sentence reduction for up to one year for completing RDAP should be ranked on the wait list according to their projected § 3621(e) release dates." *Id.*

Petitioner Close is an RDAP-eligible nonviolent offender housed in BOP's Sheridan, Oregon facility. After learning of the district court's order in *Thurman*, Close filed a pro se 28 U.S.C. § 2241 habeas corpus petition on October 1, 2009. The

---

[1]On March 16, 2009, BOP issued a Program Statement titled "Early Release Procedures Under 18 U.S.C. § 3621(e)." The purpose of the document is to "re-establish criteria and procedures when considering an inmate for early release pursuant to 18 U.S.C. § 3621(e)(2)(B) for successful completion of the Residential Drug Abuse Program." Section 9 of the Program Statement reads, in pertinent part: "Upon a qualified inmate's entry into the RDAP, the [Drug Abuse Program Coordinator], or designee, will . . . forward a *Notice of § 3621(e) Date* form [ ] to the [ ] team responsible for the inmate's sentence computation requesting computation of a § 3621(e) conditional release method date. . . ."

only issue Close raised in this petition was whether BOP should rank him on the RDAP wait list in conformity with the district court's order in *Thurman*—that is, taking into account his potential eligibility for § 3621(e) early release. On January 26, 2010, the district court consolidated Close's petition with nine others raising the same issue and designated Close's case as the lead. The district court subsequently granted BOP's motion for summary judgment, denying all of the consolidated habeas petitions. The district court found "that the conclusions in *Thurman* are neither binding nor dispositive in this matter." All Petitioners filed timely notices of appeal.

## II.  Standard of Review and Jurisdiction

We review de novo a district court's denial of a 28 U.S.C. § 2241 habeas corpus petition. *Mora-Meraz v. Thomas*, 601 F.3d 933, 939 (9th Cir. 2010). We recently held that "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621." *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011). We clarified, however, that "[a]lthough judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority, Reeb's habeas petition alleges only that the BOP erred in his particular case." *Id.* Close and the other petitioners in this case do not challenge individualized determinations. Rather, they challenge the system that BOP uses to rank all RDAP-eligible inmates on the RDAP wait list. These petitions allege that the "BOP action is contrary to . . . its statutory authority." *Id.* Therefore, the petitions are within this court's jurisdiction.[2]

---

[2]Although Petitioners do not have Certificates of Appealability, a COA is not required to appeal the denial of a § 2241 petition filed by a person in federal custody. *See Forde v. U.S. Parole Comm'n*, 114 F.3d 878, 879 (9th Cir. 1997).

## III. Discussion

Close argues that the statutory phrase "proximity to release" in 18 U.S.C. § 3621(e) requires that BOP give nonviolent offenders priority placement in RDAP to maximize the opportunity for a one-year sentence reduction upon successful completion of the program. BOP contends that the plain language of the statute unambiguously allows it to calculate "proximity to release" without incorporating the possibility of early release.

When we "review[ ] an agency's construction of the statute which it administers, [we are] confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . ." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If we determine that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

**[1]** To determine Congress's intent, "[a]s always," the "starting point is the plain language of the statute." *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204, 1207 (9th Cir. 2010) *cert. granted*, 131 S. Ct. 2874 (2011). We have explained that "[i]f the plain meaning of the statute is unambiguous, that meaning is controlling." *Id.* The statute at issue here reads, in pertinent part: "the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment . . . for all eligible prisoners by the end of fiscal year 1997 and thereafter, *with priority for such treatment accorded based on an eligible prisoner's proximity to release date*." 18 U.S.C. § 3621(e)(1)(C) (emphasis added). Subsection (e)(2)(B) provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more

than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B).

**[2]** Subsection (e)(5) contains definitions for certain terms "[a]s used in this subsection." 18 U.S.C. § 3621(e)(5). The terms defined in (e)(5) do not include "priority," "proximity," or "release date." Although § 3621 does not define any of these terms, § 3624(a)—which appears within the same subchapter as § 3621—defines the term "date of release." Section 3624(a) specifies that "date of release" is "the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." 18 U.S.C. § 3624(a). Subsection (b) explains how good time credits are appropriated; it includes no reference to provisions for early release by means of any other type of sentence reduction.

**[3]** "Courts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter." *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) (en banc). Therefore, we apply § 3624(a)'s definition of "date of release" to the nearly identical term "release date" in § 3621(e)(1)(C). The plain language of the statute contains no indication that Congress intended BOP to attribute different meanings to these terms. Indeed, Congress provided subsection-specific definitions for certain terms in § 3621(e)(5), but "release date" is not among them. *See* 18 U.S.C. § 3621(e)(5). In addition, Congress could have, but did not, add language after "proximity to release date" specifying that BOP should take into account the possibility of early release for nonviolent offenders provided in subsection (e). Nor does subsection (e) itself provide any indication that nonviolent RDAP-eligible offenders should be subject to a different system of priority for RDAP placement than violent RDAP-eligible offenders.

**[4]** Thus, we conclude that the statutory language is unambiguous on its face. Congress directed BOP to provide RDAP

services to eligible offenders "with priority . . . based on an eligible prisoner's proximity to release date," 18 U.S.C. § 3621(e)(1)(C), as calculated by applying the definition of "date of release" in § 3624(a). Our conclusion is buttressed by the fact that the early release at issue here is *discretionary*: "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons . . . ." 18 U.S.C. § 3621(e)(2)(B) (emphasis added). "Proximity to release date" cannot logically be equated with "proximity to earliest potential release date." Accordingly, Close's argument fails. The statute unambiguously does not require BOP to account for subsection (e) early release when calculating inmates' "proximity to release date" and their resulting RDAP wait list placement.

Since "the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless 'the legislative history clearly indicates that Congress meant something other than what it said.' " *Greenwood*, 615 F.3d at 1207 (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (en banc)). Close argues that this court must give effect to § 3621's recent post-enactment legislative history and construe the statute as the district court did in *Thurman*. The House Congressional Record on the Consolidated Appropriations Act of 2010 states: "To the greatest extent possible, BOP shall prioritize the participation of nonviolent offenders in the Residential Drug Abuse Treatment Program (RDAP) in a way that maximizes the benefit of sentence reduction opportunities for reducing the inmate population." 155 Cong. Rec. H13631-03 at H13887 (Dec. 8, 2009). While this statement could certainly be understood to support Close's argument here, it is not specific enough to "clearly indicate[ ] that Congress meant something other than what it said" when it enacted § 3621(e) in 1994. *Greenwood*, 615

F.3d at 1207. The House's 2009 statement is not sufficiently clear to supersede the statute's unambiguous language.[3]

## IV.   Conclusion

We affirm the district court's denial of Close's and the other habeas petitions. We note, however, that BOP's administration of RDAP, combined with the program's insufficient capacity, has created a troubling situation that calls for a legislative or regulatory remedy. As the district court observed in *Thurman*, the current system "results in a significant diminution or the outright elimination of the statutorily created incentive of sentence reductions for prisoners who seek and complete RDAP." 2009 WL 936663, at * 4. Nonetheless, given the text of 18 U.S.C. §§ 3621(e)(1)(C) and 3624(a), Petitioners' challenge to the RDAP priority scheme adopted by BOP must necessarily fail.

   **AFFIRMED.**

---

[3]Because the statute is unambiguous on its face, we give effect to its plain meaning and we need not consider whether the rule of lenity applies. *See United States v. R.L.C.*, 503 U.S. 291, 305-06 (1992) (" '[W]e have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Nor do we need to consider whether BOP's interpretation is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638-39 (9th Cir. 2004) ("If the statute is ambiguous, the agency's decision is entitled to *Chevron* deference if it has the force of law . . . . If the decision does not have the force of law, it is reviewed with 'respect' according to the factors set out in [*United States v. Mead Corp.*, 533 U.S. 218 (2001)] and *Skidmore* . . . .").